

RECEIVED
NOV 25 2015
U.S.D.C. S.D.N.Y.
CASHIERS

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

UNITED STATES OF AMERICA,

                                    Plaintiff,

    - against -

L-3 COMMUNICATIONS EOTECH, INC.,
L-3 COMMUNICATIONS CORPORATION,
and PAUL MANGANO,

                                    Defendants.

15 Civ. 9262 (RJS)

**STIPULATION AND ORDER**
**OF SETTLEMENT AND**
**DISMISSAL** ELECTRONICALLY FILED

DOC #:

DATE FILED: 11 - 25 -15

WHEREAS, this Stipulation and Order of Settlement and Dismissal (the "Stipulation") is entered into by and among the United States of America, by its attorney Preet Bharara, United States Attorney for the Southern District of New York, and on behalf of the United States Department of Defense ("DoD"), the United States Department of Homeland Security ("DHS"), and the Federal Bureau of Investigation ("FBI") (collectively, the "Government"), Defendants L-3 Communications EOTech, Inc. ("EOTech"), L-3 Communications Corporation ("L-3") (collectively, the "Corporate Defendants"), and EOTech's President, Paul Mangano (collectively, with the Corporate Defendants, "Defendants") (hereafter collectively referred to as "the Parties"), through their authorized representatives;

WHEREAS, EOTech is a Delaware corporation, with its principal place of business in Michigan. Since 2010, EOTech has been part of L-3's Warrior Systems Division;

WHEREAS, L-3 is a Delaware corporation, with offices in New York, New York;

WHEREAS, Paul Mangano is an individual domiciled in New Jersey, and is the President of EOTech;

WHEREAS, Defendant EOTech regularly manufactured and sold holographic weapon sights (also referred to as "combat optical sights" or "sights") to the military that are mounted on

weapons and used by special operations forces and others to acquire a target and accurately return fire in a range of extreme environmental conditions;

WHEREAS, the Government has filed a Complaint against L-3, EOTech, and Mangano alleging violations of the False Claims Act, 31 U.S.C. § 3729 *et seq.* (the "Act"). In its Complaint, the Government alleges that EOTech knowingly sold defective sights to the military, principally through the United States' Naval Surface Warfare Center in Crane, Indiana ("Crane") during the period from 2007 through 2014 (the "Covered Period"), and that Defendants became aware that design defects in EOTech's sights caused them to fail in cold temperature and in humid environments. The Government further alleges that although EOTech was contractually obligated to disclose these defects to the military, Defendants nevertheless concealed them until they believed that EOTech had product improvements that would correct the defects, and even then failed to disclose the nature and severity of the defects. This conduct alleged in the Complaint, including the conduct alleged concerning purchases of EOTech's sights by the FBI and DHS during the Covered Period, shall be defined as the "Covered Conduct"; and

WHEREAS, the Parties have reached a mutually agreeable resolution addressing the Covered Conduct through this Stipulation;

NOW, THEREFORE, upon the Parties' agreement, IT IS HEREBY ORDERED that:

### TERMS AND CONDITIONS

1.     This Court's exercise of subject matter jurisdiction over this action is undisputed, and the Parties consent to this Court's exercise of personal jurisdiction over each of them.

2.     Defendants EOTech and L-3 hereby admit, acknowledge, and accept responsibility for the following conduct:

2

a.     EOTech represented to Crane that its sights operated within the temperature range of -40° to 140° F and were "parallax free." "Parallax" refers to the apparent movement of the reticle relative to the target, and "parallax error" is also typically measured in MOA ("minutes of angle"). One MOA translates approximately to a 1 inch variation for every 100 yards. The greater the parallax error, the greater the discrepancy between what the user is looking at through the sight and what the user is actually aiming at.

b.     Pursuant to specific provisions in its contracts with Crane, EOTech was required to disclose to Crane "any and all performance related data that would both positively and negatively impact the reliability, maintainability, availability and/or supportability" of the product.

c.     In 2006, EOTech became aware that its sights failed to maintain zero with temperature changes, a condition it referred to as "thermal drift."

d.     EOTech continued to sell its sights to the Government without disclosing thermal drift.

e.     Beginning in 2011, EOTech conducted testing of sights sold to Crane and found thermal drift of 2 to 6 MOA over temperature variations for its carbine sights and up to 6 to 12 MOA over temperature variations for its grenade launcher and heavy machine gun sights.

f.     EOTech continued to sell its sights to the Government without disclosing its findings.

3

g.     In May of 2015, the FBI conducted testing on the EOTech sights, found
thermal drift, and presented its findings to EOTech.  Shortly thereafter,
EOTech disclosed the FBI's thermal drift findings to Crane and to the
United States Attorney's Office for the Southern District of New York.

h.     In early 2007, EOTech became aware that its sights were experiencing
increasing parallax error in cold temperature.  At 32° F, the parallax error
was 12 MOA, *i.e.*, 12 inches for every hundred yards, when measured
from outside edge to outside edge of the sight; and at 5° F, the error was
more than 20 MOA, from outside edge to outside edge.

i.     EOTech continued to sell its sights to the Government throughout 2007
without disclosing the parallax error in cold temperature.

j.     In or around April of 2008, EOTech proposed what it called a product
"improvement" to Crane that mitigated the parallax issue.  In it, EOTech
stated that it continuously tests and improves product performance, and
that recent tests showed "an increase of parallax error at very low
temperature."

k.     EOTech also represented to Crane that it subjected its sights to
environmental extremes in accordance with U.S. military testing
standards, and that the sights passed humidity and other testing "without
any observable degradation to [their] performance."

l.     In February 2009, EOTech became aware, based on testing a sample of
sights, that moisture was entering its sights.   When moisture enters a
sight, it can cause a dimming of the reticle.

4

m.  Reticle dimming can occur more quickly in humid environments. An optic's reticle is necessary to allow the user to acquire a target.

n.  EOTech continued to sell its sights to the Government for several years without disclosing the reticle dimming in humid environments.

o.  In March of 2013, EOTech proposed another product "improvement" to Crane to resolve reticle dimming.

p.  EOTech has extended Crane's warranty to correct sights returned for reticle dimming.

3.  Defendant Mangano hereby admits, acknowledges, and accepts responsibility for the following conduct:

a.  Mangano has been President of EOTech since February 2006.

b.  In or about March 2007, Mangano knew that EOTech's sights were experiencing increasing parallax error in cold temperature.

c.  EOTech continued to sell its sights to the Government without disclosing the parallax error in cold temperature. In April 2008, EOTech proposed a product improvement to Crane stating that recent tests showed "an increase of parallax error at very low temperature."

d.  In 2009, Mangano knew that EOTech's sights were experiencing reticle dimming resulting from the entry of moisture into the sights.

e.  EOTech continued to sell its sights to the Government for several years without disclosing the reticle dimming in humid environments. In March 2013, EOTech proposed a product improvement to Crane to resolve reticle dimming.

5

4.     The Corporate Defendants shall pay to the Government twenty-five million six hundred thousand dollars ($25,600,000) (the "Settlement Amount") by electronic funds transfer pursuant to written instructions to be provided by the United States Attorney's Office for the Southern District of New York no later than fifteen (15) business days after the Effective Date (defined below).

5.     Subject to the exceptions in Paragraph 6 (concerning excluded claims) below, conditioned upon the Corporate Defendants' full payment of the Settlement Amount, and subject to Paragraph 13 below (concerning bankruptcy proceedings commenced within 91 days of the Effective Date or any payment made under this Stipulation), the Government releases Defendants and all of their current and former officers, directors, and employees from any civil or administrative monetary claim the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Civil Monetary Penalties Law, 42 U.S.C. § 1320a-7a; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; the Financial Institutions Reform, Recovery, and Enforcement Act, 12 U.S.C. § 1833a; the Contract Disputes Act, 41 U.S.C. §§ 7101-7109; and the common law theories of breach of contract, payment by mistake, unjust enrichment, and fraud.

6.     Notwithstanding the releases given in Paragraph 5 of this Stipulation, or any other term of this Stipulation, the following claims of the Government are specifically reserved and are not released by this Stipulation:

a.     Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

b.     Any criminal liability;

c.     Except as expressly stated herein, any administrative liability;

6

      d.      Any liability to the Government (or its agencies) for any conduct other than the Covered Conduct; and

      e.      Any liability based upon obligations created by this Stipulation.

7.      Defendants shall be in default of this Stipulation if the Corporate Defendants fail to make the payment required in Paragraph 4, or if Defendants fail to comply with any other obligation applicable to them under the Stipulation. The Government will provide written notice of the default, to be sent by first-class mail and email to the undersigned attorneys for the Defendants at the below-listed addresses and any new address of which notice is given. The Corporate Defendants shall have an opportunity to cure the default within seven (7) business days from date of receipt of the notice of Default. In the event that a default is not fully cured within seven (7) business days of the receipt of notice of such default ("Uncured Default"), the Settlement Amount shall be immediately due and payable, and interest shall accrue at the rate of 9% per annum compounded annually on the remaining unpaid principal balance, beginning seven (7) business days after delivery of the notice of default. In the event of an Uncured Default, Defendants agree to the entry of a consent judgment in the form attached hereto as Exhibit A, and further, the United States, at its option, may: (a) rescind this Stipulation and reinstate the Complaint; (b) seek specific performance of the Stipulation; (c) offset the remaining unpaid balance from any amounts due and owing Defendants by any department, agency or agent of the United States; or (d) exercise any other rights granted by law, or under the terms of this Stipulation, or recognizable at common law or in equity. Defendants shall not contest any offset imposed or any collection action undertaken by the Government pursuant to this paragraph, either administratively or in any court. In addition, Defendants shall pay the Government all reasonable costs of collection and enforcement under this paragraph, including attorney's fees

7

and expenses.  In the event that the United States opts to rescind this Stipulation pursuant to this paragraph, Defendants shall not plead, argue or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel or similar theories, to any civil or administrative claims which relate to the Covered Conduct, except to the extent those defenses were available on the Effective Date.

      8.     Defendants waive and shall not assert any defenses Defendants may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Stipulation bars a remedy sought in such criminal prosecution or administrative action.  Nothing in this paragraph or any other provision of this Stipulation constitutes an agreement by the United States concerning the characterization of the Settlement Amount for purposes of the Internal Revenue laws, Title 26 of the United States Code.

      9.     Defendants fully and finally release the Government, and its agencies, employees, servants, and agents from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that Defendants have related to the Covered Conduct and the Government's investigation and prosecution thereof.

      10.    Defendants agree to the following:

          a.     Unallowable Costs Defined: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47) incurred by or on behalf of Defendants, and their present or former officers, directors, employees, shareholders, and agents in connection with:

i.     the matters covered by this Stipulation;

ii.    the Government's audit(s) and civil and/or criminal

       investigation(s) of the matters covered by this Stipulation;

iii.   Defendants' investigation, defense, and corrective actions

       undertaken in response to the Government's audit(s) and civil

       and/or criminal investigation(s) in connection with the matters

       covered by this Stipulation (including attorney's fees);

iv.    the negotiation and performance of this Stipulation;

v.     the payments Defendants make to the Government pursuant to

       this Stipulation, are unallowable costs for government

       contracting purposes (hereinafter referred to as Unallowable

       Costs).

b.    Future Treatment of Unallowable Costs:   Unallowable Costs will be

      separately determined and accounted for by Defendants, and Defendants

      shall not charge such Unallowable Costs directly or indirectly to any

      contract with the Government.

c.    Treatment of Unallowable Costs Previously Submitted for Payment:

      Within 90 days of the Effective Date of this Stipulation, Defendants shall

      identify and repay by adjustment to future claims for payment or otherwise

      any Unallowable Costs included in payments previously sought by

      Defendants or any of their subsidiaries or affiliates from the Government.

      Defendants agree that the Government, at a minimum, shall be entitled to

      recoup from Defendants any overpayment plus applicable interest and

9

penalties as a result of the inclusion of such Unallowable Costs on previously-submitted requests for payment. The United States, including the Department of Justice and/or the affected agencies, reserves its rights to audit, examine, or re-examine Defendants' books and records and to disagree with any calculations submitted by Defendants or any of their subsidiaries or affiliates regarding any Unallowable Costs included in payments previously sought by Defendants, or the effect of any such Unallowable Costs on the amount of such payments.

11.     Except as expressly provided to the contrary in this Stipulation, this Stipulation is intended to be for the benefit of the Parties only. The Parties do not release any claims against any other person or entity.

12.     Defendants represent and warrant that they have reviewed their financial situation, that they currently are solvent within the meaning of 11 U.S.C. §§ 547(b)(3) and 548(a)(1)(B)(ii)(I), and that they reasonably believe that they shall remain solvent following payment to the Government of the Settlement Amount. Further, the Parties warrant that, in evaluating whether to execute this Stipulation, they (a) have intended that the mutual promises, covenants, and obligations set forth constitute a contemporaneous exchange for new value given to Defendants, within the meaning of 11 U.S.C. § 547(c)(1), and (b) conclude that these mutual promises, covenants, and obligations do, in fact, constitute such a contemporaneous exchange. Further, the Parties warrant that the mutual promises, covenants, and obligations set forth herein are intended to and do, in fact, represent a reasonably equivalent exchange of value that is not intended to hinder, delay, or defraud any entity to which Defendants were or became indebted to on or after the date of this transfer, within the meaning of 11 U.S.C. § 548(a)(1).

13.     If within 91 days of the Effective Date of this Stipulation or of any payment made under this Stipulation, Defendants commence, or a third party commences, any case, proceeding, or other action under any law relating to bankruptcy, insolvency, reorganization, or relief of debtors (a) seeking to have any order for relief of Defendants' debts, or seeking to adjudicate Defendants as bankrupt or insolvent; or (b) seeking appointment of a receiver, trustee, custodian, or other similar official for Defendants or for all or any part of Defendants' assets, Defendants agree as follows:

        a.     Defendants' obligations under this Stipulation may not be avoided pursuant to 11 U.S.C. § 547, and Defendants shall not argue or otherwise take the position in any such case, proceeding, or action that: (i) Defendant' obligations under this Stipulation may be avoided under 11 U.S.C. § 547; (ii) Defendants were insolvent at the time this Stipulation was entered into; or (iii) the mutual promises, covenants, and obligations set forth in this Stipulation do not constitute a contemporaneous exchange for new value given to Defendants.

        b.     If Defendants' obligations under this Stipulation are avoided for any reason, including, but not limited to, through the exercise of a trustee's avoidance powers under the Bankruptcy Code, the Government, at its sole option, may rescind the releases in this Stipulation and bring any civil and/or administrative claim, action, or proceeding against Defendants for the claims that would otherwise be covered by the releases provided in Paragraph 5 above.  Defendants agree that (i) any such claims, actions, or proceedings brought by the Government are not subject to an "automatic

11

stay" pursuant to 11 U.S.C. § 362(a) as a result of the action, case, or proceedings described in the first clause of this paragraph, and Defendants shall not argue or otherwise contend that the Government's claims, actions, or proceedings are subject to an automatic stay; (ii) Defendants shall not plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any such civil or administrative claims, actions, or proceedings that are brought by the Government within 60 calendar days of written notification to Defendants that the releases have been rescinded pursuant to this paragraph, and (iii) the Government has a valid claim against Defendants in the amount of $25,600,000, and the Government may pursue its claim in the case, action, or proceeding referenced in the first clause of this paragraph, as well as in any other case, action, or proceeding.

c.     Defendants acknowledge that their agreements in this paragraph are provided in exchange for valuable consideration provided in this Stipulation.

14.     Each Party shall bear its own and its employees' legal and other costs incurred in connection with this matter, including the preparation and performance of this Stipulation.

15.     Any failure by the Government to insist upon the strict performance of any of the provisions of this Stipulation shall not be deemed a waiver of any of the provisions hereof, and the Government, notwithstanding that failure, shall have the right thereafter to insist upon strict performance of any and all of the provisions of this Stipulation.

16.     This Stipulation is governed by the laws of the United States.   The exclusive

jurisdiction and venue for any dispute relating to this Stipulation is the United States District Court for the Southern District of New York.  For purposes of construing this Stipulation, this Stipulation shall be deemed to have been drafted by all Parties to this Stipulation and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

17.     Subject to the exceptions in Paragraph 6, and in consideration of the obligations of the Defendants in this Stipulation, and conditioned upon Defendants' full compliance with the terms of this Stipulation, including but not limited to timely full payment of the Settlement Amount, the Government shall dismiss with prejudice the Complaint; provided, however, that the Court shall retain jurisdiction over this Stipulation and each Party to the extent the obligations herein remain unsatisfied by that Party.

18.     This Stipulation constitutes the complete agreement between the Parties.  This Stipulation may not be amended except by written consent of the Parties.

19.     The undersigned counsel and other signatories represent and warrant that they are fully authorized to execute this Stipulation on behalf of the persons and entities indicated below.

20.  This Stipulation may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Stipulation.  Facsimiles and/or PDFs of signatures shall constitute acceptable, binding signatures for purposes of this Stipulation.

21.     The effective date of this Stipulation is the date upon which this Stipulation is entered by this Court (the "Effective Date").

Agreed to by:

## THE UNITED STATES OF AMERICA

Dated:    New York, New York                *Attorneys for Plaintiff*
          November **24**, 2015              *United States of America*

                                            PREET BHARARA
                                            United States Attorney for the
                                            Southern District of New York

                             By:

                                            JAIMIE L. NAWADAY
                                            JOSEPH N. CORDARO
                                            Assistant United States Attorneys
                                            One Saint Andrew's Plaza
                                            New York, New York 10007
                                            Telephone No. (212) 637-2275/2745
                                            Facsimile No. (212) 637-2527
                                            Jaimie.Nawaday@usdoj.gov
                                            Joseph.Cordaro@usdoj.gov

14

**DEFENDANTS**

Dated:  New York, New York
         November **23**, 2015

*Attorneys for Defendant L-3*

JENNER & BLOCK LLP
BUCKLEYSANDLER LLP

By: *[signature]*

THOMAS J. PERRELLI
W. JAY DEVECCHIO
Jenner & Block LLP
1099 New York Avenue, N.W.
Suite 900, Washington, D.C. 20001-4412
Telephone No. (202) 639-6893
Facsimile No. (202) 661-4817

By: *[signature]*

ANDREW W. SCHILLING
BuckleySandler LLP
1133 Avenue of the Americas
Suite 3100, New York, NY 10036
Telephone No. (212) 600-2330
Facsimile No. (212) 600-2405

Dated:  New York, New York
         November **23**, 2015

*Defendant L-3*

By: *[signature]*
Title:  Sr. Vice President, Sr. Counsel

15

Dated:  New York, New York
       November 23, 2015

*Attorneys for Defendant EOTech*

JENNER & BLOCK LLP
BUCKLEYSANDLER LLP

By: _____

THOMAS J. PERRELLI
W. JAY DEVECCHIO
Jenner & Block LLP
1099 New York Avenue, N.W.
Suite 900, Washington, D.C. 20001-4412
Telephone No. (202) 639-6893
Facsimile No. (202) 661-4817


By: _____

ANDREW W. SCHILLING
BuckleySandler LLP
1133 Avenue of the Americas
Suite 3100, New York, NY 10036
Telephone No. (212) 600-2330
Facsimile No. (212) 600-2405


Dated:  New York, New York
       November 23, 2015

*Defendant EOTech*

By: _____

Title:  Sr. Vice President, Sr. Counsel


16

Dated:    New York, New York
          November  23 , 2015

*Attorneys for Defendant Paul Mangano*

BAKER BOTTS LLP
COVINGTON & BURLING LLP

By _____
   LYNN A. NEILS
   Baker Botts LLP
   30 Rockefeller Plaza
   New York, New York 10112
   Telephone No. (212) 408-2510

By _____
   STEVEN SHAW
   Covington & Burling LLP
   One CityCenter
   850 Tenth Street, N W
   Washington, D C
   Telephone No. (202) 662-5343

Dated:  New York, New York
        November _____, 2015

*Defendant Paul Mangano*

_____

SO ORDERED

_____
United States District Judge

11/25/15