Keith Altman (*pro hac vice*)
kaltman@lawampmmt.com
Ari Kresch
akresch@1800lawfirm.com
Excolo Law PLLC
380 Lexington Avenue
Suite 3800
New York, NY 10168
516-456-5885

*Attorneys for Relator Milton DaSilva*

<u>UNITED STATES DISTRICT COURT</u>
<u>SOUTHERN DISTRICT OF NEW YORK</u>

_____

| | |
|---|---|
| UNITED STATES OF AMERICA | \| |
|     Plaintiff, | \| |
| | \| |
| v. | \| |
| | \| |
| L-3 COMMUNICATIONS HOLDINGS, | \| |
| INC., *et al.,* | \| |
| | \| |
|     Defendants. | \| |

Case No. 15-cv-09262-RJS
Hon. Richard J. Sullivan

_____|

<u>RELATOR MILTON DASILVA'S MOTION TO BE DECALRED ELIGIBILE FOR
SHARE OF GOVERNMENT'S RECOVERY UNDER THE FALSE CLAIMS ACT, 31
USCS §3730</u>

**ORAL ARGUMENT REQUESTED**

## Table of Contents

**INTRODUCTION** ................................................................................................... 1

**PROCEDURAL HISTORY** ..................................................................................... 2

**SUMMARY OF ARGUMENT** ................................................................................ 5

**ARGUMENT** ........................................................................................................... 7

**I.    Relator Filed a Valid Qui Tam Complaint Entitling Him to A Share of the Governments' Recovery of No Less Than 15%** ......................................................... 7

**II.    Relator's Voluntary Dismissal Without Prejudice of His *Qui Tam* Suit Does Not Bar His Reward** .................................................................................................. 10

**III.    The Government's Complaint is Derivative of Relator's Complaint** ......................... 11

**a.    Before Relator's Pre-Suit Disclosure, the Government had no idea of the Fraud and There was No Other Relator.** ................................................................... 11

**b.    There is no reasonable question that the Governments Complaint Is Derivative of Relator's Complaint** ................................................................................. 12

**c.    The Government's Case Against Defendants Constitutes an Alternate Remedy** ...... 13

**d.    The Government Prejudiced Relator Because The Government Never Informed Relator's Counsel of the Pending Settlement Which Need To Be Reopened Under F.R.C.P. 60** ............................................................................................... 16

**IV.    Policy Issues Dictate That Relator Is Entitled to A Share Of Governments Recovery Where there is an alternate remedy** ...................................................................... 17

**CONCLUSION** .......................................................................................................... 20

## Table of Authorities

**Cases**

*United States ex rel. Barajas v. United States*, 258 F.3d 1004 (9th Cir. Cal. 2001) ............... 7, 14

*United States ex rel. Bledsoe v. Cmty. Health Sys.*, 342 F.3d 634, 648-649 (6th Cir. Tenn. 2003) ....................................................................................................................... 17

*United States ex rel. Lee v. Northern Adult Daily Health Care Ctr.*, 2016 WL 1171545 (E.D.N.Y. Mar. 23, 2016) ................................................................................... 14, 15

*United States ex rel. Sequoia Orange Co. v. Baird-Neece Packing Corp.*, 151 F.3d 1139, 1144 (9th Cir. Cal. 1998) ............................................................................................. 11

*United States v. Bisig*, 2005 WL 3532554 (S.D. Ind. Dec. 21, 2005) ................................... 18, 19

**Statutes**

31 USCS § 3730 (c) .................................................................................................. 6
31 USCS § 3730(b) ................................................................................................... 6
31 USCS § 3730(c)(2)(A) ..................................................................................... 2, 11
31 USCS § 3730(c)(5) ....................................................................................... passim
31 USCS § 3730(e)(4)(B) ......................................................................................... 10
False Claims Act ("FCA"), 31 USCS § 3729 ..................................................... passim

**Rules**

F.R.C.P. 60 .............................................................................................................. 17

**Other Materials**

132 Cong. Rec. H9382-03 ........................................................................................ 9

## <u>INTRODUCTION</u>

Qui Tam Relator, Mr. Milton Dasilva, by and through his counsel, brings this motion for declaratory relief and seeking his statutorily-owed reward of the proceeds recovered by the Government in the instant case brought under the False Claims Act ("FCA"), 31 USCS § 3729, *et seq.* This motion raises what appears to be an issue of first impression- Can a relator who properly reported allegations of fraud in accordance with the FCA and who unquestionably filed a valid qui tam lawsuit that was, only after intense pressure from the government,  dismissed without prejudice, recover a  share of the proceeds derived from a settlement resulting from a subsequent, albeit near-duplicative qui tam action filed by the government mimicking the Relator's original first-to-be-filed qui tam suit?  After conferring with the Government, and with the Government's assent, Relator files this motion seeking to answer this question.  If the Court finds that Relator is entitled to a share of the recovery, Relator and the Government will then either negotiate the amount of Relator's award, or, by motion, request this Court's guidance on the amount thereof.

After a reasonable search, Relators have been unable to locate any case which addresses the specific question before this Court.  Because there are no cases directly on point, Relators assert that the ultimate question before the Court is properly be broken down into the following inquiries:

1. Did Relator file a valid complaint under the FCA?

2. Did the Government pursue an alternate remedy to Relator's FCA action based on the same claims and information first raised by Relator?

3. What effect, if any, does Relator's dismissal without prejudice have on Relator's ability to recover under 31 USCS § 3730(c)(5) ?

Relators assert that the Government's pursuit Relator's claims in its own action constituted an "alternate remedy" under 31 USCS § 3730(c)(5) . The statute contains no requirement that a relator's original claim continue or succeed in order for the relator to share in fruits of the alternate remedy pursued by the Government.  Such a finding would be contrary to public policy and frustrate the very purposes of the FCA.  Consider that, under the FCA, *the Government may dismiss a relator's claim over a relator's objection.* 31 USCS § 3730(c)(2)(A).  If the Government were allowed to force dismissal of relators' claims, and then pursue those own claims itself without any requirement to pay relators their fair compensation, what relator would ever take the great personal risk and effort of seeking to bring a FCA action again?  There would simply be no incentive for a member of the public to ever shed light on false claims again.  This surely cannot be the rule intended under 31 USCS § 3730(c)(5).

Because Relator brought a valid FCA action and because the Government elected to then pursue its own successful alternate remedy derived from Relator's own disclosures and FCA claims, Relator is entitled to a share of the Government's recovery under 31 USCS § 3730(c)(5).

## PROCEDURAL HISTORY

Relator Milton Domiciano DaSilva began working for L3 Communications in the summer of 2013 as a Quality Engineer. Relator Compl[1]. ¶ 17. Almost immediately upon beginning employment there, he began to notice that the products being produced and sold by EOTech, specifically, gun sights, were defective.  *Id.* ¶¶ 45, 51.  Knowing the defective nature of the sights,

---

[1] Relator's *qui tam* complaint was filed under seal with case number 14 Civ. 2928 (AJN).  On April 8, 2016, Judge Nathan lifted the seal on the original complaint.  Because of the Court's limitations on length of exhibits, Relator cannot attach the complete complaint to this motion, but has attached 15 selected pages as Exhibit **"A"**.  Relator can provide the complete complaint to the Court if so desired.

EOTech continued selling them in tremendous quantities to a number of governmental agencies. *Id.* ¶¶ 64,65.

On August 13, 2013, Dasilva provided pre-filing disclosures to Assistant United States Attorney ("AUSA") Pierre Armand at the United States Attorney's Office in the Southern District of New York.  Radner Decl. (Attached as Exhibit "B") ¶ 6. These disclosures included documents and audio recordings of conversations.  *Id.*

On August 22, 2013, Mr. DaSilva was summarily convicted of unrelated criminal offenses in the state of Michigan and his sentencing was scheduled for September 25, 2013.  *Id.* ¶ 7. Believing that he was wrongly convicted, Mr. DaSilva relocated to Brazil where he is a citizen. *Id.* ¶ 7a.  When Mr. DaSilva failed to appear for his sentencing, a state-based warrant for his arrest was issued.  *Id.*  Mr. DaSilva continues to reside in Brazil but has always intended to return the United States.  *Id.* ¶ 37.

On or about January 15, 2014, AUSA Jamie Nawaday contacted Relator's counsel to discuss the allegations stated in Relator's pre-trial disclosures. *Id.* ¶ 8. During this initial call, AUSA Nawaday stated that, prior to Relator's disclosures, the Government had been completely unaware of the fraud identified by Relator in his voluntary pre-suit disclosure.  *Id.*  Specifically, AUSA Nawaday wanted to have copies of Relator's recordings, of which she had reviewed the transcripts and asked Relator's counsel to arrange a phone call with Relator. *Id.*  Relator's counsel advised AUSA Nawaday of Relator's fugitive status to which AUSA Nawaday responded she needed to seek permission from her supervisors before speaking to DaSilva. *Id.* ¶ 9.

Shortly thereafter, AUSA Nawaday contacted Relator's Counsel to schedule a conference call with Relator and with several agents from other federal agencies.  *Id.* ¶ 13. On January 17, 2014, Relator's counsel facilitated a conference call between Relator, AUSA Nawaday, and other

federal agents. *Id.* ¶ 14.  AUSA Nawaday and her colleagues were shocked at the allegations made by Relator during that phone call and asked him for his assistance in obtaining the evidence proving his allegations. *Id.*  Relator immediately and without hesitation gave permission to his counsel to forward Relator's materials to AUSA Nawaday. *Id.*

That very same day, on January 17, 2014, Relator's counsel emailed 6 PDF files to AUSA Nawaday, comprising transcripts of the recordings. *Id.* ¶ 15. On January 29, 2014, Relator's counsel forwarded various disclosure materials to AUSA Nawaday. *Id.* 19-20.

Relator also made himself available for additional phone calls.  *Id.* ¶ 21. On January 30, 2014, Relator's counsel facilitated another call between Relator and AUSA Nawaday since AUSA Nawaday had follow-up questions. *Id.*  On March 26, 2014, AUSA Nawaday emailed Relator's counsel seeking yet another phone call with Relator which took place on the following day. *Id.* ¶ 24.

On April 25, 2014, Relator filed a qui tam complaint under seal in the Southern District of New York and also provided a copy of the complaint with disclosures to AUSA Nawaday.  *Id.* ¶ 26-28.  After filing, AUSA Nawaday claimed the Relator's counsel was in violation of ethical duties by representing Relator because he was a fugitive.  *Id.* ¶ 28.  Relator's counsel was left with the belief that if Relator's complaint were not dismissed, bar grievances would be filed against Relator's counsel.  *Id.* ¶ 31.  Subsequently, under immense pressure from AUSA Nawaday, Relator dismissed his case with the consent of the Government and without prejudice because of the alleged difficulties in prosecuting the case while Mr. DaSilva remained out of the country avoiding the unrelated criminal matters in Michigan.  *Id.* ¶ 33. It was the intent of Relator to refile his case upon his return to the United States. *Id.* ¶ 34. Following the dismissal, Relator's counsel tried to get Relator to return to the United States, but Relator was fearful for his safety because of his

disclosures in this case as well as a previous case involving significant police misconduct. *Id.* ¶ 37.

On November 25, 2015, without any notice to the Relator and with a frank misrepresentation to the Court denying the existence of Relator's *qui tam* action, the Government filed the instant action along with a settlement the next day.  The settlement came as a shock to Relator and Relator's counsel since Relator's counsel was never informed nor invited to participate in the settlement negotiations and had not been aware of the pending settlement.  The settlement was for $25.6 million dollars.  After the settlement, AUSA Nawaday confirmed to Relator's Counsel that there was no other relator besides DaSilva. *Id.* ¶ 35.  The Government denies that Relator is entitled to an award because at the time the Government's case was filed, Relators case had already been dismissed and therefore, the Governments' action does not constitute an alternate remedy.

## SUMMARY OF ARGUMENT

Under the FCA, if a relator files a FCA action, the Government may choose its level of involvement in the action, ranging in scale from intervening in and taking primary responsibility for prosecuting the action, to allowing the action to proceed without intervening, to seeking to have the action dismissed even over the objection of the relator. 31 USCS § 3730(b) and (c). Regardless of the ultimate course the realtor's FCA action takes, the Government may also pursue the same claims and relief via an "alternate remedy" to the relator's FCA action. 31 USCS § 3730(c)(5), If the Government is successful in its pursuit of the alternate remedy, then the relator may recover just as if the Government had proceeded in and obtain the same relief in relator's own action.  To that end, the FCA states:

(5)  Notwithstanding subsection (b), the Government may elect to pursue its claim through any alternate remedy available to the Government, including any administrative proceeding to determine a civil money penalty. If any such alternate remedy is pursued in another proceeding, the person initiating the action shall have the same rights in such proceeding as such person would have had if the action had continued under this section.

31 USCS § 3730(c)(5).

Nowhere in the statute is such relief conditioned upon the continuance or the success of the Relator's original filed action. Thus, at its core, this motion concerns only the following question: Did the Relator file a valid FCA action?  If so, Relator is entitled to a share in the Government's recovery because the Government's recovery is entirely derivative of Relator's disclosures and original suit.

There are certain facts that the Government cannot, in good faith, dispute: (1) Relator made voluntary disclosures to the Government, as required by the FCA; (2) the Relator's disclosures were non-public and were not previously known to the Government; (3) the Relator subsequently filed an action alleging violations of the FCA based on these disclosures; (4) the Government did not intervene in Relator's FCA action; (5) the Government pressured Relator to dismiss his FCA action, which Relator did *without* prejudice; (6) the Government subsequently pursued its own action (indeed, *this* action) derived from the same information originally disclosed by Relator and the same claims originally pled by Relator; (7) the Government's recovery in this action arose almost in entirety from the information first disclosed by the Relator; (8) the Government withheld the existence of the Relator and Relator's prior filed action from this Court by falsely stating that there was no related case; (9) the Government never informed Relator of the pending settlement, despite having settled the claims of Relator's case **prior** to filing its own case, that is nearly identical to Relator's.

Because Relator met all requirements for filing a valid FCA action, Relator is therefore entitled to a share of the Government's recovery.  Other courts have reviewed alternate remedies and have concluded that relators are entitled to recover. *See, e.g., United States ex rel. Barajas v. United States*, 258 F.3d 1004, 1010 (9th Cir. Cal. 2001) ("If the government chooses not to intervene in the relator's action, but, instead, chooses to pursue 'any alternate remedy,' the relator has a right to recover a share of the proceeds of the 'alternate remedy' to the same degree that he or she would have been entitled to a share of the proceeds of an FCA action.")

As stated above, to find that the Government could dismiss a valid FCA claim or strong-arm a Relator into dismissal, and then bring an almost identical action based upon the same information first brought to light by Relator as a strategy to deprive the Relator of his statutory share in the recovery would undermine the very purposes of the FCA.  If a Relator brings a valid FCA action, and then the Government pursues those *same claims* and recovers in an alternate action or forum, the Relator is entitled to a statutory share of the Government's recovery.

## **ARGUMENT**

### I.  Relator Filed a Valid Qui Tam Complaint Entitling Him to A Share of the Governments' Recovery of No Less Than 15%

On April 25, 2014, Relator filed a *qui tam* complaint in the Southern District of New York[2].  The crux of the complaint was:

> 9. Defendants manufacture holographic weapons sights ("HWS" products)—technologically advanced gun sights with a viewing window that superimposes a "reticle" (a target-sight image, *e.g.*, crosshairs) upon an image of the object or person at which the weapon is aimed.
>
> 10. Although Defendants sell some of their products to hobbyists and private gun enthusiasts, Defendants' largest and most lucrative

---

[2]

customer base is comprised of government military, security, and law-enforcement agencies.

11.  As set forth in greater detail below, Relator has personal knowledge that Defendants have knowingly supplied the Real Parties with defective HWS products for at least six years. Defendants' own senior personnel have admitted to Relator that all of Defendants' HWS products have an inherent defect that makes them prone to failure; that the problem is acute if the products are stored or used in hot or humid climates, such that the products are completely unsuited for such climates; and that Defendants have known about this problem for years.

12. Despite this knowledge, Defendants have continued to sell their defective HWS products to the Real Parties, have refused to disclose the defect to the Real Parties, have actively concealed the defect from them, and have even falsely promoted their HWS products as reliable in "even … the most hostile operational environments."

*Qui tam* complaint, Exhibit A ¶¶9-12.

Distilled to its basic facts, Relator claimed that Defendants knowingly sold defective gun sights to the U.S. as well as state entities such as New York and California.  If true, this is a clear violation of the FCA.

Before filing the qui tam complaint, Relator made voluntary pre-suit disclosures to the Government. Radner Decl. ¶ 6.  None of Relator's disclosure was based upon public information. Prior to the disclosure, the Government was completely unaware of the alleged FCA violations by Defendant.  *Id*. ¶ 8.  Thus, absent Relator's disclosure, the Government could have been unaware of the fraud to this day.

There can be little dispute that Relator pleaded a valid *qui tam* claim in his original complaint.   As discussed in more detail below, there is almost complete overlap between the allegations of the Government's case and that of Relator.  Although no motion to dismiss on the merits was ever filed in Relator's case, it would be hard to imagine how such a motion could be

granted given that the Government settled the very same claims with Defendants based in part on specific findings of fact that mirror Relators allegations and recovered $25.6 million.

Once DaSilva filed a valid *qui tam* suit, he is guaranteed a share of the recovery regardless of whether the Government intervenes, chooses not to intervene, settles the claim, or dismisses the suit and pursues the claim using an alternate remedy.  Looking to the legislative history of the False     Claims     Amendments     Act     of     1986     provides:

> If the Government comes into the case, the person is guaranteed a minimum of 15% of the total recovery even if that person does nothing more than file the action in federal court. This is in the nature of a "finder's fee" and is provided to develop incentives for people to bring the information forward. ***The person need do no more than this to secure an entitlement to a minimum 15%.*** In those cases where the person carefully develops all the facts and supporting documentation necessary to make the case and presents it in a thorough and detailed fashion to the Justice Department as required by law, and where that person continues to play an active and constructive role in the litigation that leads ultimately to a successful recovery to the United States Treasury, the Court should award a percentage substantially above 15% and up to 25%.

132 Cong. Rec. H9382-03 (emphasis added)

While the legislative history speaks to the situation where the Government intervenes, the application to the instant case is clear.  Relator is entitled to at least 15% so long as he filed a valid *qui tam* suit.  If the Government chooses not to intervene in the suit, then the minimum recovery would be 25% [3].  If, as in this case, the Government pursued an alternative remedy rather than intervene in the relator's *qui tam* suit and recovered, then the relator would be entitled to a share

---

[3] 31 U.S.C. § 3730(d)(2)

of the recovery to the same extent as if the Government had intervened in the case.  31 USCS § 3730(c)(5).

Therefore, since Relator made voluntary pre-suit disclosures in accordance with 31 USCS § 3730(e)(4)(B), filed a *qui tam* suit including the required disclosures which were served on the Government, and the Government ultimately recovered based upon Relator's disclosure, Relator is entitled to a share of the Government's recovery of no less than 15%.

## II.     Relator's Voluntary Dismissal Without Prejudice of His *Qui Tam* Suit Does Not Bar His Reward

After a relator's right to recovery had matured, it makes no difference what course of action the Government takes with respect to the suit so long as the Government recovers based upon the elements of the suit.  In choosing what role to play in a relator's case, the Government has essentially three options.  It can intervene in the case and take over prosecution.  It can choose not to intervene and allow the relator to prosecute the action.  Or the Government can choose to dismiss the action:

> (2) (A) The Government may dismiss the action notwithstanding the objections of the person initiating the action if the person has been notified by the Government of the filing of the motion and the court has provided the person with an opportunity for a hearing on the motion.

> 31 USCS § 3730(c)(2)(A)

The right for the Government to dismiss the action has been explored by at least one court:

> Although the amendments give the relator the right to remain a party after government intervention, the government's power to dismiss or settle an action is broad. The amended statute grants the relators an opportunity for a hearing on the motion to dismiss, but does not specify any conditions under which the relator may block the motion. This court has previously noted that "it is not clear whether in practice this notice and hearing requirement has amounted to much of a hurdle for the government." Kelly, 9 F.3d at 753 n.11.

> The relators point to the statement in Kelly that 31 USCS §
> 3730(c)(2)(A) allows the government to "move for dismissal of a
> case which it believes has no merit." See id. at 753. They suggest
> that this statement means that lack of merit is the exclusive ground
> upon which the government may seek dismissal. Kelly does not so
> hold.
>
> The legislative history of the 1986 Amendments supports the district
> court's conclusion that a meritorious suit may be dismissed upon a
> proper showing.
>
> *United States ex rel. Sequoia Orange Co. v. Baird-Neece Packing
> Corp.*, 151 F.3d 1139, 1144 (9th Cir. Cal. 1998)

That the Government can chose to dismiss a relator's case against their wishes is exactly why 31 USCS § 3730(c)(5) (alternate remedy) was enacted protecting a valid disclosure by a relator.  As such, the same reasoning would protect a relator who disclosed and then voluntarily dismissed.  Here, under immense pressure from the Government, Relator "voluntarily" dismissed his complaint without prejudice, intending to file the case again when he was able to return to the United States.  There is no statute that says that a Relator's fugitive status makes his *qui tam* suit invalid, particularly since Relator is not bringing his own claim, but one for the Government.

Therefore, because Relator filed a valid *qui tam* suit, that he later dismissed the suit without prejudice under pressure from the Government is irrelevant to whether he may recover as a relator. Furthermore, Relator continues to have the right to refile his action but for the Government's settlement of his claim without his knowledge discussed below.

## III.   The Government's Complaint is Derivative of Relator's Complaint
### a.   Before Relator's Pre-Suit Disclosure, the Government had no idea of the Fraud and There was No Other Relator.

Before Relator's disclosures to the Government in August 2013, and prior to the filing of the *qui tam* suit the Government had no idea of the alleged fraud prior to Relator's disclosure.

Radner Dec. ¶ 8.  After having reviewed the disclosure, AUSA Nawaday made multiple inquiries for additional information from Relator through Relator's counsel.  *Id.*¶¶ 8-24.

At all times, AUSA Nawaday was aware of Relator's legal status as a fugitive. *Id.* at ¶ 9. On multiple occasions, AUSA Nawaday requested telephone interviews with Relator. *Id.* at ¶¶ 14, 21, 24. Because of Relator's status, Ms. Nawaday was required to obtain permission from her superiors before conducting these interviews.  *Id.* at ¶¶ 9-11.  After receiving permission, multiple interviews with Relator took place.  *Id.* at ¶¶ 14, 21, 24.

After the Government settled the case with Defendants, AUSA Nawaday confirmed to Relator's counsel that there were no other relators other than Mr. DaSilva.  *Id.* at ¶ 35.

Thus not only did Relator provide the Government with disclosures concerning a fraud the Government was unaware of, the Government sought and obtain Relators assistance with full knowledge that he was a fugitive.  Furthermore, Relator was the only relator.

### b.  There is no reasonable question that the Governments Complaint Is Derivative of Relator's Complaint

There can be little question that government's complaint in this case substantially overlaps that of Relator's *qui tam* complaint.  The central allegation of the Government's complaint is:

> As set forth more fully below, for years, EOTech—at one time an L-3 subsidiary, and subsequently part of L-3's Warrior Systems Division—sold combat optical sights to DoD, DHS, and FBI that Defendants knew were materially defective. The sights are mounted on weapons and used by special operations forces, law enforcement personnel, and others to acquire a target and accurately return fire in a range of extreme environmental conditions. Beginning around 2006, Defendants became aware that design defects in the sights caused them to fail in cold temperatures and in humid environments. EOTech was contractually obligated to disclose these defects to DoD, so that DoD could prevent defective products from being fielded to troops. Defendants nevertheless failed to disclose these defects, while touting the U.S. military's use of their products in

order to boost their image and drive sales in the commercial marketplace.
¶2 U.S.A. Comp.

Compare the Government's complaint to that of the Relator shown above in paragraphs 9-12 of Exhibit "A". While the complaints are not identical, the essence of the complaints is exactly the same. EoTech knowingly sold defective sights to the U.S. Government and various other state bodies. Therefore, it is clear that the Government's claims are derivative of Relator's *qui tam* claims.

### c. The Government's Case Against Defendants Constitutes an Alternate Remedy

The Government could have chosen to intervene in Relator's *qui tam* suit. Not only did the Government not intervene in Relator's suit, Relator was pressured by the Government to voluntarily dismiss the case without prejudice. (Radner Decl. ¶ 30). As discussed above, because Relator had filed a valid *qui tam* action, the subsequent status of the action is irrelevant to Relator's right to recover so long as the Government recovers based upon Relator's claims.

Subsequent to the dismissal without prejudice, the Government continued using Relator's disclosures, investigated the fraud further, and ultimately settled the case with Defendants based upon the very claims originally brought by Relator. To call the Government's case an "alternate remedy" to Relator's case is an overstatement- it is the same case filed under a different case number simply excising Relator's involvement.

Although the Government filed the instant case, it is clear that the settlement agreement with Defendants was negotiated and signed prior to the filing. The complaint was filed on November 24, 2015 (ECF # 1). The settlement agreement (ECF #5) was signed by Defendants on November 23, 2015. Thus, the filing of the complaint was a mere procedural formality because the claim was already resolved.

We therefore have the following sequence of events:

1. Relator files a qui tam lawsuit
2. Relator voluntarily dismisses his lawsuit without prejudice
3. The Government settles the claims raised by Relator using Relator's disclosures.
4. The Government files its case along with the settlement.

Given that the Government's settled claims were essentially overlapping of Relator's claims, and the claims were settled before the Government filed its case, this in effect constituted a settlement of Relator's claims.  Since the settlement occurred before the instant case was filed, any argument that the Government might make that the settlement was not related to Relator's *qui tam* suit should fail.

Even if the Court were to decide that the Government's case was settled after the instant case was filed, this does not change the result.  The law is clear that if the Government pursues and recovers based upon an alternate remedy, a relator recovers in the same way as if the Government had intervened in their case.   31 USCS § 3730(c)(5).   Much of the current jurisprudence on alternate recoveries stems from *United States ex rel. Barajas v. United States*, 258 F.3d 1004 (9th Cir. Cal. 2001).  There the Court wrote:

> If the government chooses not to intervene in the relator's action, but, instead, chooses to pursue "any alternate remedy," the relator has a right to recover a share of the proceeds of the "alternate remedy" to the same degree that he or she would have been entitled to a share of the proceeds of an FCA action. *Id.* at 1010

Very recently, an alternate remedy case was decided in the Eastern District of New York.  *United States ex rel. Lee v. Northern Adult Daily Health Care Ctr.*, 2016 WL 1171545 (E.D.N.Y. Mar. 23, 2016).  There the Court was looking to what must the relator have done to be eligible to recover under an alternate remedy.  First, the court noted that there neither the Second Circuit nor any district courts in the district had address this issue.  Id. at *5.  In *Lee*, the Court

found that in order to recover under an alternate remedy theory, the relator must have filed a

valid *qui tam* action.

> The Court agrees with these circuit court decisions. The Court interprets the FCA to require a qui tam plaintiff to state a valid qui tam claim before the relator may claim any right to a share of an alternate remedy. This follows from the fact that, where the government elects to pursue an alternate remedy, the FCA grants all relators the same rights they would have in the relators' qui tam action. Where a relator lacks a valid qui tam claim on which the government or the relator could proceed, the relator lacks any rights to a recovery in that action. In turn, because the relator lacks any right to recovery in the original action, the relator has no right to recovery that would also apply to an alternate remedy. As the Sixth Circuit noted in Bledsoe, denying a relator a share of an alternate remedy where the relator fails to plead a valid qui tam claim is consistent with the rationale that forms the basis for allowing relators to recover in qui tam cases, which is to encourage the government and relators to "collaborate" in battling fraud. Bledsoe, 501 F.3d at 522. That incentive is not undermined when courts deny relators who have not stated valid and particularly pled qui tam claims a share of an alternate remedy "[s]ince there is no prospect for relators to recover on their claims under any circumstances," and, therefore, denying recovery of an alternate remedy "does not decrease relators' incentives to bring qui tam actions in the first instance."

> *Id.* at *6

Unlike *Lee*, Relator did file a valid *qui tam* action.  Therefore, the reasoning of *Lee* stands

for the proposition that so long as a relator files a valid *qui tam* action, the relator is entitled to an

award if the Government recovers under an alternative remedy.   In the instant case, the

Government did recover under an alternative remedy after Relator filed a valid *qui tam* complaint.

As such, Relator is entitled to recover, despite having voluntarily dismissed his action without

prejudice.

**d. The Government Prejudiced Relator Because The Government Never Informed Relator's Counsel of the Pending Settlement Which Need To Be Reopened Under F.R.C.P. 60**

At no time prior to the filing of the instant case did the Government inform Relator's counsel or the Court that there was a pending settlement of Relator's claims.  This raises the question of whether the settlement in the instance case was fair and whether the judgment should be reopened.

First, a review of the Civil Case Sheet filed in the instant case (ECF # 3) demonstrates that the government failed to properly notify the Court of the existence of Relator's qui tam suit:

> Has this action, case, or proceeding, or one essentially the same been previously filed in SDNY at any time? No ☑ Yes ☐ Judge Previously Assigned
>
> If yes, was this case  Vol. ☐  Invol. ☐  Dismissed. No ☐  Yes ☐  If yes, give date _____ & Case No. _____

Clearly, this is false.  Without question, Relator's *qui tam* suit should have been disclosed to this Court at the time of the filing of the Government's parasitic lawsuit.  The form requires disclosure of a case even if the case had been dismissed.  Obviously, without this disclosure, the Court would have been completely unaware of Relator's case.  Furthermore, this is not harmless error.  This error, in part, has led to a potential limitation on an individuals' rights and the complete abrogation of the policy for rewarding relators for reporting fraud against the government.

Because Relator was not informed of the Government's settlement and did not participate in the settlement, Relator was forestalled from asserting his right as the "first to file" and make any effort to refile his case. The government's conduct in this regard completely offends the entire policy underlying the FCA.

> There is no language in the FCA suggesting that a relator's statutory right to a share of the proceeds from the settlement of claims he or she had asserted may properly be abrogated by an agreement to which the relator was not a party.

> *United States ex rel. Bledsoe v. Cmty. Health Sys.*, 342 F.3d 634,
> 648-649 (6th Cir. Tenn. 2003)

Although the Government clearly has the right to proceed or not with a qui tam action as it sees fit, relators still have the right to notice to protect their interest in a share of the Governments recovery.  Where notice is withheld, as here, the Government should not be allowed to profit at the expense of a relator who's right to recover under the FCA has matured through the filing of a valid *qui tam* suit.  Furthermore, having failed to give notice to Relator, an argument can be made that the Government's settlement with Defendants is invalid and must be reopened under F.R.C.P. 60.

## IV.    Policy Issues Dictate That Relator Is Entitled to A Share Of Governments Recovery Where there is an alternate remedy

Should the Government take the position that recovery in the instant case is not an alternate remedy because the Government did not intervene in Relator's action, this could completely frustrate the purposes of the civil remedies portion of the FCA.  Several courts have looked at the question of what constitutes an alternate remedy in the context of actions by the Government.  Two important cases are *United States ex rel. Bledsoe v. Cmty. Health Sys.*, 342 F.3d 634 (6th Cir. Tenn. 2003).

> It is readily apparent that, under the government's interpretation of § 3730(c)(5), the government could decline to intervene in a qui tam suit, then settle that suit's claims separately and deny the relator his or her share of the settlement proceeds simply because the government had not formally intervened in the qui tam action. Consequently, the government would frequently carry the incentive to decline to intervene in an action and, having been apprised of possible FCA violations by a private citizen, to independently pursue an investigation of the alleged FCA violator(s). Such a result would not further Congress' legislative intent that the government and private citizens collaborate in battling fraudulent claims, and it would impede, not further, Congress' legislative intent to encourage private citizens to file qui tam suits.

…

We therefore hold that a settlement pursued by the government in lieu of intervening in a qui tam action asserting the same FCA claims constitutes an "alternate remedy" for purposes of 31 USCS § 3730(c)(5).

The government argues alternatively that even if the May 8, 2000 settlement agreement operated as an "alternate remedy" for purposes of § 3730(c)(5), Relator nevertheless is not entitled to a relator's share of the settlement proceeds. Its principal contention in support is that the language of the settlement agreement "specifically reserved and excluded" claims asserted in Relator's qui tam action from the agreement's "scope and terms." We are not persuaded. If the government has recovered funds lost from conduct asserted in Relator's qui tam action, then the government has essentially settled Relator's claims, regardless of whether it formally intervened in Relator's action or not. The FCA provides that a relator is entitled to 15-25% of the proceeds when the government has settled the claims stemming from a relator's valid qui tam suit. HN27There is no language in the FCA suggesting that a relator's statutory right to a share of the proceeds from the settlement of claims he or she had asserted may properly be abrogated by an agreement to which the relator was not a party.

*Id.* at 648-649

In *United States v. Bisig*, 2005 WL 3532554 (S.D. Ind. Dec. 21, 2005), the Court wrote

The United States' proposed interpretation of "alternate remedy" would enable the United States to stay the qui tam suit, prosecute the Defendant, and recover the Defendant's assets through criminal forfeiture without having to share that recovery with the relator, who was first to uncover the fraudulent activities and report them to the United States. The advantages that this interpretation would grant the United States is clear: it would not be forced to share its recovery with relators. As a result, the United States would carry the incentive in most cases to stay the qui tam action and seek recovery through the criminal prosecution and forfeiture proceedings. But this result would contradict the FCA's purpose. First, when dealing with a defendant who violates the FCA, the United States will likely recover most, if not all, of the defendant's available assets through the criminal forfeiture proceedings. This results in the defendant becoming judgment-proof. And while the United States' interpretation would allow the relator to continue with the qui tam

action against the defendant, there would be nothing left for the relator to recover from a judgment-proof defendant. Consequently, this interpretation would have the effect of destroying Congress' unambiguous purpose that the government and private citizens collaborate in battling fraudulent claims, and it would impede Congress' legislative intent to encourage private citizens to file qui tam suits.

Therefore, the FCA ought to be interpreted in a manner that will maintain the incentive underlying the qui tam aspect of the FCA. Thus, the court holds in this case that because the United States has achieved a monetary recovery from the Defendant in a manner outside of the qui tam action, and that recovery made an actual monetary recovery by the relator in the qui tam action either impossible or futile, the United States, in effect, elected to pursue its claim through an alternate remedy under § 3730(c)(5). This interpretation is especially appropriate in this particular situation in which the United States caused the stay of the qui tam action in order to pursue criminal prosecution against the Defendant and recover substantially all the Defendant's assets through forfeiture proceedings. Simply stated, the United States cannot sidestep the requirement to share recovery with the relator, who contends that it first discovered the fraud and informed the United States regarding the fraud, by merely electing to recover through criminal forfeiture proceedings.

Id. at *4

Although *Bisig* was discussing the Government pursuing an alternative remedy through a criminal proceeding, the application to this case is precisely the same.  In essence, it would be inequitable for the Government to receive a disclosure through a qui tam suit, not intervene in the suit, and then recover on the same issues in another context such as a criminal proceeding.

In this case, the Government, undoubtedly using Relator's original and independent disclosure and cooperation, recovered in a different, albeit clone like case subsequent to the filing of his valid qui tam action.  If the Court is to allow this course of action by the Government, the Government would be incentivized to frustrate the awards to Relators who following the FCA and bring valid qui tam actions.

## <u>CONCLUSION</u>

Based on the above arguments, Plaintiff respectfully requests this Court rule that Relator Milton DaSilva is a relator for the purposes of the instant action and that he is entitled to a share of the Government's recovery against Defendants.  Plaintiff further requests that the Court enter a briefing schedule to determine the extent of Relator's share which according to the FCA is between 15% and 25% of the recovery.  Lastly, Plaintiff requests that the Court set a briefing schedule for a motion for fees and costs to be assessed against Defendants on behalf of Relator.

Dated: April 14, 2016                                      Respectfully Submitted by:


                                                          <u>/s Keith Altman</u>
                                                          Keith Altman (*pro hac vice*)
                                                          kaltman@lawampmmt.com
                                                          Ari Kresch
                                                          akresch@1800lawfirm.com
                                                          Excolo Law PLLC
                                                          380 Lexington Avenue
                                                          Suite 3800
                                                          New York, NY 10168
                                                          516-456-5885